UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CASE NO. _____

RODNEY P. CARPENTER,

    Plaintiff,

v.

DELTA AIR LINES, INC.,

    Defendant.

COMPLAINT

JURY TRIAL DEMANDED

COMES NOW Plaintiff and for his cause of action, claims and alleges as follows:

## PARTIES

1. Plaintiff, Rodney P. Carpenter, is, and at all times relevant to this proceeding, has been a resident of the City of Minneapolis, County of Hennepin, State of Minnesota.

2. Plaintiff is an "employee or subordinate official" of an air carrier subject to the Railway Labor Act as defined in 45 U.S.C. §§181 and 182; and is an employee as defined in the Minnesota Human Rights Act, Minn. Stat. §363A.03, subd.15.

3. Defendant is a foreign corporation doing business in the State of Minnesota.

4. Defendant is a "common carrier by air" subject to the terms of the Railway Labor Act as specified in 45 U.S.C. §§181 and 182; and is an employer as defined in the Minnesota Human Rights Act, Minn. Stat. §363A.03, subd.16.

## JURISDICTION

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 because this action arises under laws of the United States, specifically the Railway Labor Act, 45 U.S.C. §§151, et seq.

6. This Court has jurisdiction over pendent and related state claims pursuant to the provisions of 28 U.S.C. §1367 and Minn. Stat. Chap.363A.

## FACTS

7. Plaintiff was hired by defendant as a customer service agent on or about July 12, 1999.

8. In 2006, plaintiff transferred to defendant's operations at the Minneapolis/St. Paul International Airport ("MSP Airport").

9. Beginning in the fall of 2008, and continuing until plaintiff was suspended from his position at MSP Airport, plaintiff was an active and vocal supporter of unionization for Delta customer service representatives.

10. Plaintiff signed a union authorization card at the ticket counter in full view of other customer service representatives and supervisory and management employees.

11. Plaintiff openly discussed his support of the union with other customer service representatives where he could easily be overheard by supervisory and management personnel of defendant.

12. Plaintiff posted union notices on a bulletin board in the Delta baggage service area within the MSP Airport.

13. Plaintiff organized a meeting of Delta employees to get information from the union regarding unionization, which was scheduled to take place on the evening of June 29, 2009.

14. Plaintiff is gay.

15. Beginning in approximately April 2009, defendant's General Manager Airport Operations at MSP Airport ("Airport Operations Manager"), who is also gay, began

questioning plaintiff regarding his sexual preferences and asking plaintiff to meet him at a bar after work.

16. The Airport Operations Manager indicated to plaintiff that the Airport Operations Manager could help him out as much as his position would allow.

17. The comments and queries of the Airport Operations Manager were unwelcome.

18. In the course of the Airport Operations Manager's queries, plaintiff indicated that he did not go to the bar where the Airport Operations Manager requested that they meet, but did indicate that he occasionally went to a different bar in the Twin Cities area.

19. On or about June 27, 2009, the Airport Operations Manager approached plaintiff at the bar, purchased drinks for plaintiff, and attempted to spend the night with plaintiff.

20. While some romantic activity did take place between plaintiff and the Airport Operations Manager, plaintiff did not allow the Airport Operations Manager to spend the night.

21. Beginning in approximately April 2009, plaintiff was required by his lead person to take a number of additional shifts beyond his regular shift.

22. Plaintiff repeatedly requested that he be allowed to work only his regular shift, not the extra shifts, but those requests were repeatedly denied.

23. Plaintiff's lead person did not require persons who had not expressed support for the union to work the number of extra shifts required of plaintiff.

24. Plaintiff's lead person did not require heterosexual male and female employees to work the number of extra shifts required of plaintiff.

25. On June 29, 2009, plaintiff's lead person alleges that plaintiff was scheduled for a shift beginning at 8:00am.

26. The alleged 8:00am shift was not a regular shift for plaintiff, and plaintiff does not recall seeing that he was scheduled for that shift, believing that he began work at noon that day.

27. When plaintiff did not appear at 8:00am for the alleged shift, another customer service representative called plaintiff to see where he was, and plaintiff indicated that he believed he was to start work at noon but would come to work as soon as he could.

28. Because of the miscommunication with respect to start time of the shift, plaintiff arrived approximately two hours after the lead person alleges his shift was scheduled to begin.

29. Plaintiff was suspended on June 29, 2009.

30. Other employees who were not vocal union supporters, and who had worse attendance records than plaintiff, were not disciplined.

31. Heterosexual male and female employees with worse attendance records than plaintiff were not disciplined.

32. Plaintiff was informed on or about July 24, 2009, that defendant discontinued his health insurance, but plaintiff has never been formally notified that he has been terminated.

33. Plaintiff has not been restored to work from his June 29, 2009, suspension.

## COUNT 1 – VIOLATION OF RAILWAY LABOR ACT

34. Plaintiff hereby repeats and realleges each and every matter contained in paragraphs 1-33 as if set forth fully herein.

35. Section 2, Fourth of the Railway Labor Act guarantees employees the right to organize and bargain collectively through representatives of their own choosing, and makes it unlawful for any carrier to interfere in any way with the organization of its employees, or to influence or coerce employees in an effort to induce them not to join a labor organization.

36. Defendant was aware of plaintiff's support of a union for customer service representatives of defendant.

37. Defendant's actions in suspending plaintiff and not returning him to duty as a customer service representative were because of his union activity and to coerce plaintiff and others not to support a union at defendant.

38. Defendant's actions with respect to plaintiff violate Section 2, Fourth of the Railway Labor Act, 45 U.S.C. §152, Fourth.

39. As a direct and proximate result of defendant's wrongful conduct toward plaintiff, plaintiff has suffered damage from loss of income that he has not yet been able to replace fully, despite diligent efforts to do so, emotional distress, punitive damages, attorneys fees, and other damages recoverable under the Railway Labor Act, all in an amount to be determined at trial in excess of $75,000.

## COUNT 2 – SEX DISCRIMINATION
## MINNESOTA HUMAN RIGHTS ACT

40. Plaintiff hereby repeats and realleges each and every matter contained in paragraphs 1-33 as if set forth fully herein.

41. The Airport Operations Manager's actions towards plaintiff constitute sexual harassment, as defined under the Minnesota Human Rights Act.

42. Defendant's suspension and failure to reinstate plaintiff were in retaliation for his not agreeing to an ongoing relationship with the Airport Operations Manager.

43. The actions of defendant's Airport Operations Manager constitute sexual harassment as defined in Minn. Stat. §363A.03, subd.43, which is a form of sex discrimination as defined in Minn. Stat. §363A.03, subd.13.

44. Defendant's stated reason for its actions was pretext for sex discrimination.

45. As a direct and proximate result of defendant's wrongful conduct toward plaintiff, plaintiff has suffered damages from loss of income that he has not yet been able to replace fully, despite diligent efforts to do so, mental anguish, attorneys fees, and other damages recoverable under the Minnesota Human Rights Act, all in an amount to be determined at trial in excess of $75,000.

## COUNT 3 – SEXUAL ORIENTATION DISCRIMINATION
## MINNESOTA HUMAN RIGHTS ACT

46. Plaintiff hereby repeats and realleges each and every matter contained in paragraphs 1-33 as if set forth fully herein.

47. Defendant's suspension and failure to reinstate plaintiff to his job as customer service representative for defendant was because of his sexual orientation, as defined in Minn. Stat. §363A.03, subd.44, in violation of the Minnesota Human Rights Act.

48. Defendant's stated reason for its actions were pretext for sexual orientation discrimination.

49. As a direct and proximate result of defendant's wrongful conduct toward plaintiff, plaintiff has suffered damages from loss of income that he has not yet been able to replace fully, despite diligent efforts to do so, mental anguish, attorneys fees, and other damages recoverable under the Minnesota Human Rights Act, all in an amount to be determined as trial in excess of $75,000.

**WHEREFORE**, plaintiff prays for relief as follows:

A. Damages for lost wages, compensatory damages, emotional distress, mental anguish, punitive damages, and other damages in a reasonable sum to be determined at trial in excess of $75,000;

B.   For costs, including reasonable attorneys fees incurred in pursuing this action; and

C.   For such other and further relief as the Court deems just and equitable in the premises.

## JURY TRIAL DEMANDED

WILLIAMS & IVERSEN, P.A.

DATED:   12-28-09

s/Paul W. Iversen
Richard A. Williams, Jr. 117559
Paul W. Iversen 193707
Angela M. Rouillard 0323251
1611 West County Road B, Suite 208
St. Paul, MN 55113
ATTORNEYS FOR PLAINTIFF
651-848-0280/Phone  651-848-0282/Fax